IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **AMERIS BANK,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 1:24-cv-394-TFM-N |
| | ) |
| **GEAUX EXPRESS INCORPORATED,** | ) |
| *et al.*, | ) |
| | ) |
|     **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the *Motion for Entry of Default Judgment Against Defendants* (Doc. 13, filed on April 25, 2025) in which Plaintiff Ameris Bank motions the Court enter default judgment against Defendant Geaux Express Incorporated and Defendant Harry Nicholas Palles. Having considered the motion and the relevant law, the Court finds the motion for default judgment is due to be **GRANTED in part and DENIED in part**.

### I.     JURISDICTION AND VENUE

The Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332 (diversity).

There are adequate allegations to support personal jurisdiction and venue. The district court has personal jurisdiction over the claims in this action because the events that gave rise to this action are alleged to have occurred within this judicial district. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291-92 (11th Cir. 2000) ("Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint. . . . General personal jurisdiction, on the other hand, arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated. The due process requirements for general personal

jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state.").

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions that gave rise to this litigation occurred in this judicial district.

## II.   BACKGROUND

### A.   Factual Background

#### 1.   Vehicle Financing Agreement 7-000

On or about September 28, 2020, Defendant Geaux Express ("Geaux Express") entered into and executed a certain Vehicle Financing Agreement ("VFA 7-000") in favor of Balboa Capital Corporation ("Balboa") for the purpose of Plaintiff Ameris Bank ("Ameris") providing Geaux Express financing for the purchase of a 2020 Chevrolet Express 3500 Truck, Vehicle Identification Number 1HA3GTCG2LN009630 ("Vehicle 1"). Doc. 10 at 3, 17-19; Doc. 13 at 9-10. Contemporaneously with the execution of VFA 7-000, Defendant Harry Nicholas Palles ("Palles") entered into and executed a certain *Personal Guaranty Vehicle Financing Agreement #338037-000* ("Guaranty 7-000") in favor of Balboa, guarantying the payment and performance of all obligations of Geaux Express due to Balboa under VFA 7-000 and all other obligations existing or thereafter arising. Doc. 10 at 3-4, 21; Doc. 13 at 9-10. To secure the amounts due Balboa pursuant to VFA 7-000 and to secure all other obligations due Balboa, Geaux Express granted Balboa a first priority security interest in Vehicle 1. Doc. 10 at 3. Balboa perfected its security interest in Vehicle 1 by filing the proper forms with the Alabama Department of Revenue. *Id.* The Alabama Department of Revenue issued a Certificate of Title for Vehicle 1, denoting Balboa as the first priority lienholder on Vehicle 1. *Id.* Effective as of December 10, 2021, Balboa entered into and executed an Assignment of Agreements ("Assignment") in favor of Ameris, assigning to Ameris its interest in the VFA 7-000, Guaranty 7-000, and the Certificate of Title

issued for Vehicle 1.  *Id.* at 5-6, 39-55.

Pursuant to VFA 7-000, Geaux Express agreed to repay Balboa in seventy-two (72) equal monthly payments of $857.00 each, beginning on December 7, 2020.  *Id.* at 3, 18-19.  Pursuant to Section 16 of VFA 7-000, Geaux Express defaulted in the terms of the VFA 7-000 and Palles defaulted upon the term of Guaranty 7-000 by failing to make any payment which became due on or after January 7, 2024.  *Id.* at 6, 9, 18-19, 21.  Section 17(a) of VFA 7-000 states:

> [u]pon the occurrence of an event of default, Creditor may: (a) sue for and recover from Debtor the sum of: (1) all unpaid Monthly Installment Payments and other payments, including late charges and interest, due under this Agreement then accrued, all accelerated future payments due through the last day of the term of this Agreement; (2) any and all cost or expenses paid or incurred by Creditor in connection with the repossession, holding, repair, reconditioning and subsequent sale, lease or disposition of the Collateral, including without but not limited to attorney's fees and costs, whether or not litigation is commenced; (3) the residual value of the Collateral which Debtor fails to return to Creditor (or which Debtor converts or destroys, or which Creditor does not or is unable to repossess); (4) all other costs or expenses paid or incurred by creditor at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the creditors rights and remedies under this agreement, including, but not limited to, attorney's fees and costs, whether or not litigation is commenced, and taxes imposed by any governmental agency; (5) any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtors default or Creditors repossession or disposition of the Collateral; and (6) any and all other damages proximately caused by Debtor's default.

*Id.* at 6-7, 18-19.

On February 2, 2024, Ameris exercised its right to accelerate the maturity date and declared all obligations arising pursuant to the VFA 7-000 immediately due and payable as provided in paragraph 17 of the VFA 7-000.  *Id.* at 7, 18-19.  As of February 2, 2024, Geaux Express was past due in the payments due Ameris pursuant to VFA 7-000 in an amount totaling $857.00 and late charges of $308.52 were due pursuant to VFA 7-001.  *Id.* at 7.  On February 2, 2024, the present value of the remaining thirty-four (34) future payments discounted at five and eighty-five one-hundredths percent (5.85%) yields an amount equal to $26,791.26.  *Id.* at 7.  As of February 2,

2024, the outstanding balance of the sum of past due payments, late charges, and the present value of the remaining outstanding payments totaled an amount equal to $27,956.78. *Id*. Beginning on February 2, 2024, and continuing thereafter, interest began accruing on the outstanding balance at the rate of 18% per annum or $13.79 per diem. *Id.* at 8.

On or about March 27, 2024, Ameris provided Geaux Express and Palles a Notice of Disposition of Collateral ("the Vehicle 1 Auction Notice"), notifying Geaux Express and Palles that Ameris would sell Vehicle 1 by auction. *Id.* at 8, 57. Ritchie Bros. ("the Auctioneer") advertised Vehicle 1 for sale on its website www.ironplanet.com ("the Auction Website"). *Id.* at 8. On or about April 4, 2024, the Auctioneer closed the sale of Vehicle 1 for $7,500.00. *Id*. On or about April 18, 2024, after paying sales commissions and other costs of the sale, Ameris received net proceeds of $3,253.75 from the sale of Vehicle 1. *Id.* As of April 18, 2024, interest had accrued on VFA 7-000 in the total amount of $1,047.80. *Id*. After applying the net proceeds of $3,253.75 to the outstanding balance, Geaux Express owed Ameris the principal balance of $25,750.84 as of April 18, 2024. *Id.* Between April 18, 2024, and October 23, 2024, interest continued to accrue on the outstanding balance at the rate of 18% per annum or $12.70 per diem. *Id.* at 9. Accordingly, as of October 23, 2024, Geaux Express and Palles owed Ameris the sum of $28,138.26, comprising of principal of $25,750.84 and accrued interest of $2,387.42, plus interest accruing after October 23, 2024, at the per diem rate of $12.70. *Id.* at 9; Doc. 13 at 11.

Between October 23, 2024, and April 11, 2025, interest continued to accrue on the outstanding balance owing on VFA 7-000 at the rate of 18% per annum, or $12.70 per diem, in the additional amount of $2,158.84. Doc. 10 at 8-9; Doc. 13 at 11. As a result of Geaux Express's breach of the VFA 7-000 and Palles' breach of the Guaranty 7-000, Geaux Express and Palles have damaged Ameris and are jointly and severally liable to Ameris in an amount (calculated as

of April 11, 2025) equal to $30,297.10, plus interest accruing after April 11, 2025, at the per diem rate of $12.70.  *Id*.

    **2.**    **Vehicle Financing Agreement 7-001**

On or about December 31, 2020, Geaux Express entered into and executed a certain *Vehicle Financing Agreement* ("VFA 7-001") in favor of Balboa for the purpose of Balboa providing Geaux Express financing for the purchase of a 2020 Chevrolet Express 3500, Vehicle Identification Number: 1HA3GTCG5LN013431 ("Vehicle 2"), a GMC Savana 3500, Vehicle Identification Number: 1GD37SCGOL1275083 ("Vehicle 3"), and a GMC Savana 3500, Vehicle Identification Number: 7GZ67VCGXLN010542 ("Vehicle 4").  Doc. 10 at 4, 26-28; Doc. 13 at 10.  On or about December 31, 2020, Palles entered into and executed a certain *Personal Guaranty Vehicle Financing Agreement #338037-001* ("Guaranty 7-001") in favor of Balboa, guarantying the payment and performance of all obligations of Geaux Express due to Balboa under VFA 7-001 and all other obligations existing or thereafter arising.  Doc. 10 at 5; Doc. 13 at 10.  To secure the amounts due Balboa pursuant to VFA 7-001 and to secure all other obligations due Balboa, Geaux Express granted Balboa a first priority security interest in Vehicle 2, Vehicle 3, and Vehicle 4. Doc. 10 at 4.  Balboa perfected its security interest in Vehicle 2, Vehicle 3, and Vehicle 4 by filing the proper forms with the Alabama Department of Revenue.  *Id.* at 5.  The Alabama Department of Revenue issued a Certificate of Title for Vehicle 2, Vehicle 3, and Vehicle 4, denoting Ameris as the first priority lienholder.  *Id*.   Effective as of December 10, 2021, Balboa entered into and executed the Assignment in favor of Ameris, assigning to Ameris its interest in the VFA 7-001, Guaranty 7-001, and each Certificate of Titled issued for Vehicle 2, 3, and 4.  *Id.* at 5-6, 39-55.

Pursuant to VFA 7-001, Geaux Express agreed to repay Balboa in seventy-two (72) equal monthly payments of $2,375.00 each, beginning on February 13, 2021.  *Id.* at 4, 26-28.  Pursuant

to section 16(b) of the VFA 7-001, Geaux Express defaulted in the terms of the VFA 7-001 and Palles defaulted on the terms of Guaranty 7-001 by failing to make any payment which became due pursuant to VFA 7-001 on or after January 7, 2024.  *Id.* at 9-10, 14.  Section 17(a) of VFA 7-001 states:

> [u]pon the occurrence of an event of default, Creditor may: (a) sue for and recover from Debtor the sum of: (1) all unpaid Monthly Installment Payments and other payments, including late charges and interest, due under this Agreement then accrued, all accelerated future payments due through the last day of the term of this Agreement; (2) any and all cost or expenses paid or incurred by Creditor in connection with the repossession, holding, repair, reconditioning and subsequent sale, lease or disposition of the Collateral, including without but not limited to attorney's fees and costs, whether or not litigation is commenced; (3) the residual value of the Collateral which Debtor fails to return to Creditor (or which Debtor converts or destroys, or which Creditor does not or is unable to repossess); (4) all other costs or expenses paid or incurred by creditor at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the creditors rights and remedies under this agreement, including, but not limited to, attorney's fees and costs, whether or not litigation is commenced, and taxes imposed by any governmental agency; (5) any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtors default or Creditors repossession or disposition of the Collateral; and (6) any and all other damages proximately caused by Debtor's default.

*Id.* at 10, 18-19.

On February 2, 2024, Ameris exercised its right to accelerate the maturity date and declared all obligations arising pursuant to the VFA 7-001 immediately due and payable as provided in Section 17 of the VFA 7-001.  *Id.* at 10.  On February 2, 2024, the present value of the remaining thirty-six (36) future payments discounted at five and eighty-five one-hundredths percent (5.85%) yields an amount equal to $78,243.35.  *Id*.  As of February 2, 2024, the outstanding balance of the sum of past due payments and the present value of the remaining outstanding payments totaled an amount equal to $78,243.35.  *Id.* at 11.  Beginning on February 2, 2024, and continuing thereafter, interest began accruing on the outstanding balance at the rate of 18% per annum or $38.59 per diem.  *Id*.

On or about March 12, 2024, Ameris provided Geaux Express and Palles a Notice of Disposition of Collateral for Vehicle 4 ("the Vehicle 4 1st Auction Notice"), notifying Geaux Express and Palles that Ameris would sell Vehicle 4 by auction. *Id.* at 11, 59. On or about April 20, 2024, Ameris provided Geaux Express and Palles a Notice of Disposition of Collateral for Vehicle 3 ("the Vehicle 3 Auction Notice"), notifying Geaux Express and Palles that Ameris would sell Vehicle 3 by auction. *Id.* at 11, 61. On or about May 1, 2024, Ameris provided Geaux Express and Palles a second Notice of Disposition of Collateral for Vehicle 4 ("the Vehicle 4 2nd Auction Notice"), notifying Geaux Express and Palles that Ameris would sell Vehicle 4 by auction. *Id.* at 11, 63. On or about May 14, 2024, Ameris provided Geaux Express and Palles a Notice of Disposition of Collateral for Vehicle 2 ("the Vehicle 2 Auction Notice"), notifying Geaux Express and Palles that Ameris would sell Vehicle 2 by auction. *Id.* at 12, 65.

The Auctioneer advertised Vehicle 2, Vehicle 3, and Vehicle 4 for sale on the Auction Website. *Id.* at 12. On or about May 17, 2024, the Auctioneer closed the sale of Vehicle 3 for $6,000.00, netting proceeds paid to Ameris of $2,025.00 after paying sales commissions and other costs of the sale. *Id.* As of May 17, 2024, interest had accrued on VFA 7-001 in the total amount of $4,051.50. *Id.* After applying the net proceeds of $2,025.00 to the outstanding balance, Geaux Express owed Ameris a balance of $80,269.85 as of May 17, 2024, comprising of principal of $78,243.35 and accrued interest of $2,026.50. *Id.* After May 17, 2024, interest continued to accrue on the outstanding principal balance at the rate of 18% per annum or $38.59 per diem. *Id.* at 13.

On or about May 24, 2024, the Auctioneer closed the sale of Vehicle 4 for $9,000.00, netting proceeds paid to Ameris of $4,255.90 after paying sales commissions and other costs of the sale. *Id.* Between May 17, 2024, and May 24, 2024, interest had accrued on VFA 7-001 in

the total amount of $270.11. *Id.* After applying the net proceeds of $4,255.90 to the outstanding balance, Geaux Express owed Ameris the principal balance of $76,284.05 as of May 24, 2024. *Id.* After May 24, 2024, interest continued to accrue on the outstanding balance at the rate of 18% per annum or $37.62 per diem. *Id.*

On or about June 6, 2024, the Auctioneer closed the sale of Vehicle 2 for $7,500.00, netting proceeds paid to Ameris of $3,073.75 after paying sales commissions and other costs of the sale. *Id.* As of June 6, 2024, interest had accrued on VFA 7-001 in the total amount of $489.05. *Id.* After applying the net proceeds of $3,073.75 to the outstanding balance, Geaux Express owed Ameris the principal balance of $73,699.36 as of June 6, 2024. *Id.* at 14. After June 6, 2024, interest continued to accrue on the outstanding balance at the rate of 18% per annum or $36.34 per diem. *Id.* Between May 24, 2024, and October 23, 2024, interest continued to accrue on the outstanding balance at the rate of 18% per annum or $36.34 per diem. *Id.* As a result of Geaux Express's breach of the VFA 7-001 and Palles's breach of Guaranty 7-001, as of October 23, 2024, Ameris has been damaged in the amount of $78,751.30, comprising of principal of $73,699.36 and accrued interest of $5,051.94, plus interest accruing after October 23, 2024, at the per diem rate of $36.34. *Id.*; Doc. 13 at 11. Between October 23, 2024, and April 11, 2025, interest continued to accrue on the outstanding balance owing on VFA 7-001 at the rate of 18% per annum, or $36.34 per diem, in the additional amount of $6,178.63. Doc. 10 at 14; Doc. 13 at 11.

As a result of Geaux Express's breach of the VFA 7-001 and Palles' breach of the Guaranty 7-001, Geaux Express and Palles have damaged Ameris and are jointly and severally liable to Ameris in an amount (calculated as of April 11, 2025) equal to $84,929.93, plus interest accruing after April 11, 2025, at the per diem rate of $36.34. Doc. 10 at 14; Doc. 13 at 12.

### B.     Procedural Background

On October 24, 2024, Ameris originally filed its Complaint in which it brought claims against Geaux Express and Palles for breach of contract and attorney's fees. Doc. 1. Summonses were issued for Geaux Express and Palles (Doc. 3) on October 28, 2024, which were returned executed (Docs. 5, 6). According to the proofs of service, Geaux Express was served on November 4, 2024, through its registered agent, Palles (Doc. 5), and Palles was personally served on the same date (Doc. 6).

On November 14, 2024, the Court ordered Ameris to file an amended complaint to properly plead jurisdiction (Doc. 9), and Ameris filed its Amended Complaint (Doc. 10) on December 2, 2024, in which it corrected its jurisdictional pleadings as directed by the Court.

On January 2, 2025, Ameris filed a Motion for Entry of Default Against Defendants (Doc. 11) in which it motioned the Clerk of Court enter default against Geaux Express and Palles, pursuant to Fed. R. Civ. P. 55(a), and the Clerk of Court entered default against the defendants on January 3, 2025 (Doc. 12). On April 25, 2025, Ameris filed a Motion for Entry of Default Judgment Against Defendants (Doc. 13) and memorandum in support (Doc. 13-1), in which it motions the Court enter default judgment against Geaux Express and Palles, pursuant to Fed. R. Civ. P. 55(b)(2). On May 5, 2025, the Court entered an Order that set a deadline for the defendants to file a response to the motion for default judgment, set the motion for a virtual hearing for June 20, 2025, and directed Ameris to serve the defendants, via mail and email, a copy of the Order as well as the instructions to attend the virtual hearing. Doc. 16. The certified mail returns were sent to the defendants' registered address and were both returned as undeliverable (Docs. 18, 19), but Ameris filed a notice it emailed to the defendants the information that the Court ordered (Doc. 17). Neither Geaux Express nor Palles filed a response to the motion for default judgment.

On June 20, 2025, Palles filed a Suggestion of Bankruptcy (Doc. 20), and the Court, in turn, stayed this matter as to Palles, pursuant to 11 U.S.C. § 362(a) (Doc. 21).  The Court held the virtual hearing for the motion for default judgment at which only counsel for Ameris, Stephen Alan Ray, attended.  The motion for default judgment is ripe for review as to Geaux Express, based on the evidentiary material that was filed in support of the motion.

### III.   STANDARD OF REVIEW

Fed. R. Civ. P. 55 provides the mechanism for default judgments.  Specifically, Fed. R. Civ. P. 55 establishes a two-part process for obtaining a default judgment.  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend and that failure is shown by affidavit or otherwise, the clerk [of court] must enter the party's default."  FED. R. CIV. P. 55(a).  After default has been entered, if the "claim is for a sum certain or a sum that can be made certain by computation," the clerk must enter default judgment.  FED. R. CIV. P. 55(b)(1).  "In all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).  Once a party applies for a default judgment, "[t]he court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  *Id*.  Accordingly, simply because a defendant is in default under Fed. R. Civ. P. 55(a) does not mean the plaintiff is automatically entitled to a default judgment under Fed. R. Civ. P. 55(b).  *See generally* 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2685 (4th ed. 2016). Additionally, in this Circuit, "there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor."  *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244-45 (11th Cir. 2015)

(*quoting Worldwide Web Sys*. and holding same). The Eleventh Circuit states default judgments are "a drastic remedy that should be used sparingly and only in extreme situations where no other forms of relief are available." *Graveling v. Castle Mortg. Co.*, 631 F. App'x 690, 698 (11th Cir. 2015)[1] (*quoting Mitchell v. Brown & Williamson Tobacco Corp.,* 294 F.3d 1309, 1316-17 (11th Cir. 2002)) (internal quotations omitted).

While the entry of default is a necessary condition for obtaining a default judgment, it is not sufficient. "[A] default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover," but instead "a defaulted defendant is deemed to 'admit[ ] the plaintiff's well-pleaded allegations of fact.'" *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (*quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

Fed. R. Civ. P. 55(b)(1) permits entry of judgment by the clerk without a hearing in cases where "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation." FED. R. CIV. P. 55(b)(1). In all other cases, the Court "may conduct hearings" to "conduct an accounting," "determine the amount of damages," "establish the truth of any allegation by evidence," or "investigate any other matter." FED. R. CIV. P. 55(b)(2)(A)-(D). Though the language indicates a hearing is not a "per se requirement," Eleventh Circuit precedent indicates that evidentiary hearings "are required in all but limited circumstances." *SEC v. Smythe*, 420 F.3d 1225, 1231-32 n.13 (11th Cir. 2005); *see also Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 746-47 (11th Cir. 2017) (citations omitted).

---

[1] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

## IV. DISCUSSION AND ANALYSIS

Since default has been entered, the factual allegations of the amended complaint are now deemed admitted. *See Giovanno v. Fabec,* 804 F.3d 1361, 1366 (11th Cir. 2015) ("When a defendant defaults, he admits the plaintiff's well-pleaded allegations of fact." (internal quotations marks and citation omitted)).

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009).

The facts that are alleged in the Amended Complaint, along with the evidence that was tendered by Ameris in support of its motion for default judgment, support Ameris' claims that are based on Geaux Express' default upon the terms of the vehicle financing agreements, including, without limitation, the recovery of money damages, attorney's fees, and expenses. Additionally, the Court finds the relief that Ameris requests adheres to Fed. R. Civ. P. 54(c). *See* FED. R. CIV. P. 54(c) ("[D]efault judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). Accordingly, Ameris' motion for default judgment for money damages that are requested in Counts I and II of the Amended Complaint is **GRANTED** solely as to Geaux Express, its request for attorney's fees and expenses that is found in Count III of the Amended Complaint is **HELD IN ABEYANCE** pending Ameris' submission of a separate motion and evidentiary support, and the motion for default judgment is **DENIED with leave to refile** as to Palles after his bankruptcy case is resolved, and if appropriate.

## V. CONCLUSION

Based on the Court's analysis, the Motion for Entry of Default Judgment Against

Defendants (Doc. 13) is **GRANTED** as to Plaintiff Ameris Bank's request to enter default judgment against Defendant Geaux Express Incorporated for money damages as requested in Counts I and II of the Amended Complaint, **HELD IN ABEYANCE** as to Ameris Bank's request for attorney's fees and expenses as requested in Count III of the Amended Complaint, and **DENIED with leave to refile** as to Defendant Harry Nicholas Palles.  It is therefore **ORDERED**:

1. As to Count I of the Amended Complaint, **DEFAULT JUDGMENT** is **ENTERED** in favor of Plaintiff Ameris Bank and against Defendant Geaux Express Incorporated in the amount of $31,186.10 as of June 20, 2025, plus interest accruing at the rate of $12.70 per diem after June 20, 2025, and until the date of judgment[2];

2. As to Count II of the Amended Complaint, **DEFAULT JUDGMENT** is **ENTERED** in favor of Plaintiff Ameris Bank and against Defendant Geaux Express Incorporated in the amount of $87,473.73 as of June 20, 2025, plus interest accruing at the rate of $36.34 per diem after June 20, 2025, and until the date of judgment[3];

3. As to Count III of the Amended Complaint, Plaintiff Ameris Bank's request for attorney's fees and costs is **HELD IN ABEYANCE**, and Ameris Bank shall submit its attorney's fees and costs by motion with evidentiary support by **September 9, 2025**; and

---

[2] Ameris' motion for default judgment sought Count I damages as of April 11, 2025, in the amount of $30,297.10, comprising of principal of $25,750.84 and accrued interest (as of April 11, 2025) of $4,546.26, plus interest accruing after April 11, 2025, and until entry of the Judgment at the per diem rate of $12.70.  The Court takes judicial notice that 70 days of interest has accrued at the rate of $12.70 per day between April 11, 2025, and June 20, 2025, resulting in additional interest of $889.00.

[3] Ameris' motion for default judgment sought Count II damages as of April 11, 2025, in the amount of $84,929.93, comprising of principal of $73,699.36 and accrued interest (as of April 11, 2025) of $11,230.57, plus interest accruing after April 11, 2025, and until entry of the Judgment at the per diem rate of $36.34. The Court takes judicial notice that 70 days of interest has accrued at the rate of $36.34 per day between April 11, 2025, and June 20, 2025, resulting in additional interest of $2,543.80.

  4.  Interest shall accrue on the judgment at the rate established by 28 U.S.C. § 1961.

This matter remains stayed as to Defendant Harry Nicholas Palles, and consequently, the Court will withhold entry of a final judgment pursuant to Fed. R. Civ. P. 58. Plaintiff Ameris Bank, however, may seek by motion entry of a final judgment pursuant to Fed. R. Civ. P. 54(b)[4] as to its claims against Defendant Geaux Express if it deems such necessary.

  **DONE** and **ORDERED** this 18th day of August 2025.

             /s/ Terry F. Moorer
             TERRY F. MOORER
             UNITED STATES DISTRICT JUDGE

---

[4] "A district court must follow a two-step analysis in determining whether a partial final judgment may properly be certified under Rule 54(b)." *Peden v. Stephens*, 50 F.4th 972, 977 (11th Cir. 2022) (quoting *Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 777 (11th Cir. 2007)). "First, the court must determine that its final judgment is, in fact, both final and a judgment." *Id.* (*Lloyd Noland Found.*, 483 F.3d at 977). Second, "the district court must then determine that there is no just reason for delay in certifying it[s] [decision] as final and immediately appealable." *Id.* (quoting *Lloyd Noland Found.*, 483 F.3d at 977). When determining whether there is no just reason for delay, the district court must consider "judicial administrative interests— including the historic federal policy against piecemeal appeals—and the equities resolved" and "certifications must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties." *Id.* (internal citations omitted).